IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:15cr22-MHT |
| | ) | (WO) |
| BRODRICK BROWN | ) | |

OPINION AND ORDER

Defendant Brodrick Brown is before the court on a petition for revocation of his supervised release. The petition alleges that he has committed two violations of the conditions of his supervised release: (1) he possessed a firearm and (2) he committed a new offense, that is, he has been charged in state court with domestic violence in the third degree by way of harassing communications, in violation of 1975 Alabama Criminal Code §§ 13A-6-132 and 13A-11-8(b).

Defense counsel filed a motion for Brown to receive a mental-health evaluation to determine his competency to participate in the revocation proceedings, as well his mental capacity at the time of the alleged violations. The court held a hearing on the motion,

which is unopposed by the government, on September 17, 2019. For the reasons explained below, the court will order these and other mental-health evaluations, all to be conducted at Bureau of Prisons (BOP) mental-health facilities.

A.

A court may order a competency evaluation on a party's motion, or on the court's own motion, "at any time after the commencement of probation or supervised release and prior to the completion of the sentence" if there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). The court may order a defendant to be committed for a reasonable period of time to the custody of the Attorney General to be placed in a suitable BOP

facility for this competency examination. *See* §§ 4241(b), 4247(b).

On September 10, 2019, Brown was evaluated by forensic neuropsychologist Dr. Robert Shaffer, who determined that Brown suffers from a "neurocognitive disorder secondary to brain injury." Motion for Competency Evaluation and Motion to Continue (doc. no. 229) at Exh. 1. Dr. Shaffer reports that Brown's "racing thoughts and ... communication are not subject to voluntary control." *Id.* Dr. Shaffer further opines that Brown "will be unable to assist in his defense" and "unable to communicate with counsel unless his mania is brought under control with medication." *Id.*

The court, therefore, has reasonable cause to believe that Brown is suffering from a mental disease or defect that renders him incompetent to continue with the revocation proceeding. The court will order him to be evaluated at a BOP mental-health facility, pursuant to 18 U.S.C. §§ 4241(b) and 4247(b). Once the examination is complete, the examiner will prepare a

3

psychological report and file this report with the court and with counsel, pursuant to § 4247. This report should include a description of the psychological and medical tests administered and their results; the examiner's findings, diagnosis, and prognosis of Brown's mental condition; and the examiner's opinions as to whether, given the demands that may be made on Brown throughout these proceedings, he may currently be "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

B.

If, after this evaluation, the court were to find that Brown is incompetent to proceed, the court would then be required to commit him again to the custody of the Attorney General, and again he would need to be hospitalized for treatment in a suitable facility,

though this time in order to determine whether there is a substantial probability that, in the foreseeable future, he will attain the capacity to permit the revocation proceedings against him to go forward. *See* 18 U.S.C. § 4241(d)(1). The court wishes to avoid the further delay and inconvenience to the parties, and to the court, of another potential commitment, including the extra time required to transport Brown from the BOP facility back to this district and then back to the facility again. Thus, the court will order that, if the BOP examiner finds Brown incompetent, the examiner should, if possible and practicable as allowed by the applicable statutory time constraints, *see* 18 U.S.C. § 4241(b), and without an additional court order, immediately conduct a restoration evaluation pursuant to § 4241(d)(1) to determine if there is a substantial probability that, in the foreseeable future, Brown will regain competency. However, if the evaluator concludes that Brown is incompetent to proceed but is unable, for whatever reason, to reach the related issue of

restoration, the BOP should, if feasible, still hold Brown at the evaluation site so that a competency hearing can promptly be held by video-conferencing. This will allow the court to order a restoration evaluation, if appropriate, without first transporting Brown back to the jail in the local district.

C.

Defense counsel has also asked for an examination under U.S.C. § 4242 of Brown's mental competency at the time of the offense.

Because of the circumstances presented in Brown's case, including the results of the preliminary evaluation by Dr. Shaffer, the court finds it appropriate to order this evaluation as well. Should Brown be determined mentally competent to proceed, it is more convenient for all parties to make the insanity determination now, rather than having to recommit and send him off again for the determination.

Accordingly, the court will order that, if during the course of Brown's competency commitment, his mental condition permits the BOP examiners to make a determination of whether he was insane at the time of the charged violations, the examiners shall make such a determination. To the extent practicable, the insanity evaluation should be conducted simultaneously, or in seriatim, with the other ordered evaluations.

D.

Should the evaluator find Brown competent to proceed, the evaluator should, if feasible, also immediately perform a 'pre-sentencing study' of him pursuant to 18 U.S.C. § 3552(b), to avoid any additional delay from having to recommit Brown for this study. This court has held that, where there is a reasonable basis to believe that a defendant's mental disease or defect--including a substance-abuse disorder--contributed to the conduct alleged, the court should order a mental-health evaluation. *See United*

*States v. Kimbrough*, No. 2:07cr260, 2018 WL 989541 (M.D. Ala. Feb. 20, 2018) (Thompson, J.); *see also United States v. Mosley*, 277 F. Supp. 3d 1294 (M.D. Ala. 2017) (Thompson, J.) (discussing the issue of substance-abuse disorders in further detail).

Here, Brown has been found by Dr. Shaffer to exhibit manic symptoms, likely related to brain injury. The court has reason to believe that Brown's mental disorders, and potentially other co-occurring cognitive deficits or limitations, together or alone, contributed to the violations with which he is charged.

Should Brown be found competent to proceed and be convicted of any violation, the court would order such a study to aid in fashioning an appropriate disposition, by helping to determine (1) whether and how Brown's mental disorders and deficiencies, together or alone, should mitigate the disposition; and (2) what type of treatment, if any, he should receive during supervised release or incarceration to prevent further criminal activity and assist with rehabilitation. The

BOP's recommendations should, therefore, focus on the dual, overlapping issues of mitigation and treatment: the role, if any, of Brown's possible mental disorders, diminished or limited mental capacity, and substance abuse, together or alone, may have played in his charged conduct, and what treatment is recommended for him in light of his individual characteristics and history.

18 U.S.C. § 3552(b) authorizes the court to order that a pre-sentencing study be done by the BOP upon the finding of a "compelling reason" or where there are no adequate professional resources available in the local community to perform the study. In this case, the court seeks a comprehensive, longitudinal evaluation of Brown's mental health to assess not only whether he suffers from a substance-abuse disorder and any co-occurring mental disorders or cognitive deficits, but how these disorders and deficits interact, if at all, and to assist in the development of a specialized treatment plan, in light of his mental-health

diagnoses, that will help to ensure that he does not continue to violate the law. There are no local resources available that can provide such a specialized, comprehensive, and longitudinal evaluation in the local jail, where Brown is currently being detained. Also, defense counsel himself ask that such an evaluation be done while Brown is housed at the BOP facility. Because there are no adequate professional resources available at the local jail; because Brown will already be in BOP custody for the competency evaluation; and because Brown wants the evaluation himself, the court need not reach the issue of whether there is a "compelling reason" for the inpatient study.

E.

In conclusion, the court wants the BOP to conduct the following evaluations: (1) Brown's competency to proceed with the revocation proceedings; (2) if necessary, a restoration evaluation; (3) Brown's mental state at the time of the alleged violations; (4) how

mental illness, substance-abuse, and cognitive deficiencies or other limitations, together or alone, may mitigate his alleged conduct; and (5) what type of treatment, if any, he should receive in prison and/or during supervised release to assist in his rehabilitation. All of these evaluations should be conducted while Brown is at the designated BOP facility, in one stay (reasonably prolonged if necessary and feasible but within the time allowed by applicable law), and, thus, without having to transfer him back and forth between the examination site and the local jail and so as to avoid unnecessary delay.

**\*\*\***

Accordingly, it is ORDERED that defendant Brodrick Brown's motion for a mental-health evaluation (doc. no. 229) is granted as follows:

(1) Pursuant to the provisions of 18 U.S.C. § 4241 and §§ 4247(b) & (c), the United States Marshal for this district shall immediately remove defendant Brodrick Brown to the custody of the warden of an

appropriate BOP institution as may be designated by the Attorney General, where he is to be committed for the purpose of being observed, examined, and treated by one or more qualified psychiatrists or psychologists at the institution. The statutory time period for the examination shall commence on the day defendant Brown arrives at the designated institution. The examination shall be conducted in the suitable facility closest to the court, unless impracticable.

(2) Pursuant to 18 U.S.C. § 4241 and 4242, the examining psychiatrists or psychologists shall evaluate whether defendant Brown is currently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

(3) In the event that the examiners find that defendant Brown is suffering from a mental disease or defect rendering him mentally incompetent, the

**examining psychiatrists or psychologists shall, pursuant to 18 U.S.C. § 4241(d)(1), also evaluate whether there is a substantial probability that, in the foreseeable future, he will attain the capacity to permit the proceedings to go forward.**

**(4) During the time defendant Brown is at the BOP facility, the examining psychiatrists or psychologists shall evaluate whether Brown was insane at the time of the alleged violations of the conditions of his supervised release.**

**(5) Pursuant to 18 U.S.C. § 3552(b), during the time defendant Brown is at the BOP facility, the examining psychiatrists or psychologists shall evaluate defendant Brown's psychological condition for the purposes of sentencing and shall include their findings in a report to be presented to this court.**

**(a) To assist the court in assessing defendant Brown's culpability--as a mitigating factor--the study shall discuss his history and characteristics, and shall particularly address (i) whether he suffers from**

any mental disorder, including but not limited to a substance-abuse disorder and any cognitive deficiencies or other limitations, and if so, which ones; (ii) if he has any mental disorders, substance-abuse disorders, and cognitive deficiencies, how, if at all, they relate to or interact with each other, or may be viewed as having caused, led to, or contributed to a substance-abuse disorder, if any; (iii) what role, if any, his mental disorders, substance-abuse disorders, and cognitive deficiencies or other limitations, alone or together, played in his commission of the offenses with which he is now charged; (iv) how his mental disorders, substance-abuse disorders, and cognitive deficiencies, together or alone, may impact his ability to refrain from engaging in future criminal activity, and to meet other conditions of supervision, such as attending scheduled meetings with his supervising officer.

(b) In addition to assessing whether defendant Brown suffers from any mental disorders,

**substance-abuse disorders, and cognitive deficiencies or other limitations, the study shall provide recommendations for treatment and other supportive services to be provided to him while on supervised release to improve the likelihood of him becoming a productive member of society and refraining from substance abuse and criminal activity. The study should address his offense conduct, his personal characteristics, history, and circumstances; his mental health and history thereof; which treatment modalities, treatment settings, and supportive or other services are likely to be most effective in helping him to refrain from violating conditions of supervised release; which specific BOP programs are recommended, and why, in the event that he is incarcerated for an extended period of time,** *see* **https://www.bop.gov/inmates/custody_and_care/docs/20170 914_BOP_National_Program_Catalog.pdf; and whether, assuming sincere and good-faith efforts on the part of defendant Brown, relapse is to be reasonably expected.**

Among other issues, the study shall address whether there is any medication that can be used in conjunction with any other treatment to address his disorders or other mental-health problems, if any.

(c) Finally, the study shall discuss any other matters the BOP believes are pertinent to the sentencing factors set forth in 18 U.S.C. § 3553(a).

DONE, this the 30th day of September, 2019.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**